UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Ronald L. Reed,

                    Petitioner,

      vs.

Jessica Symmes,

                    Respondent.              Civ. No. 08-4998 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

      This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Amended Petition for a Writ of Habeas Corpus,

pursuant to Title 28 U.S.C. §2254.[1]  The Petitioner Ronald L. Reed ("Reed") appears

---

      [1]On August 22, 2008, Reed filed a Motion to proceed in forma pauperis ("IFP), in
which he contended that he was unable to pay the $5.00 filing fee that is required by
the provisions of Title 28 U.S.C. §1914(a).  See, Docket No. 2.  After our issuance of
an Order to Show Cause why he could not pay the filing fee, see, Order, Docket No.
7, Reed made that payment on October 10, 2008.  See, Docket No. 9.  Accordingly,
since the filing fee has been paid in this case, we recommend that Reed's IFP Motion
(continued...)

by Howard I. Bass Esq., and the Respondent appears by Mark Nathan Lystig, Minnesota Assistant Attorney General. For reasons which follow, we recommend that the Amended Petition for a Writ of Habeas Corpus be dismissed with prejudice.

## II. Facts and Procedural Background

Reed is a State prisoner, who is currently serving a life sentence at the Minnesota Correctional Facility, in Oak Park Heights, Minnesota. The sentence arises from Reed's conviction, by a Jury, on March 1, 2006, in the Minnesota District Court for Ramsey County, on one (1) Count of Premeditated Murder in the First Degree, in violation of Minnesota Statutes Section 609.185(c), and on one (1) Count of Conspiracy to Commit First Degree Murder, in violation of Minnesota Statutes Section 609.175, Subdivision 2. See, Amended Petition, Docket No. 6, at ¶4. The facts which led to Reed's conviction were summarized by the Minnesota Supreme Court as follows:

> St. Paul police officer James Sackett was shot and killed while responding to a false emergency call on May 22, 1970. Shortly after midnight, a woman called the police to request a ride to the hospital for a woman in labor at 859 Hague Avenue in St. Paul. Sackett and his partner Glen

---

(...continued)
be denied as moot.

Kothe were dispatched to 859 Hague and parked in front of the residence.

After Sackett knocked on the front door and received no response, Kothe walked to the back door and knocked on it. He heard a dog bark inside, and as he leaned over the back railing to warn Sackett about the dog, he heard a loud bang and saw a bright flash from the direction of the intersection in front of the house. Kothe heard a scream, and when he ran to the front of the house he discovered that Sackett had been shot. Kothe sought cover behind his squad car and radioed for assistance. Sackett was pronounced dead at the hospital as a result of a gunshot wound to the chest.

The ensuing investigation revealed that the shot that killed Officer Sackett did not come from inside 859 Hague and that no one there had called the police or been involved in the shooting. No weapon or shell casing was found in the area. The phone call was traced to a phone booth at Selby Avenue and Victoria Street. Further investigation and voice printing identified the caller as Constance Trimble (now Smith), Ronald Reed's girlfriend and mother to his child.

State v. Reed, 737 N.W.2d 572, 578 (Minn. 2007).

Trimble-Smith was subsequently tried, and was acquitted of killing James Sackett ("Sackett"), in 1972. Id. During her Trial, Trimble-Smith denied any knowledge of a plan to shoot a police officer, but instead, she testified that "she had been instructed to make the false emergency call as a pre-arranged signal to the St. Paul police to proceed to 859 Hague and bust Gerald Starling, an associate of Trimble-Smith and

Reed, for possession of drugs." Id. Notably after she was acquitted, Trimble-Smith "was held in contempt of court and jailed for 25 days for refusing to disclose who told her to make the phone call." Id.

Prior to Trimble-Smith's acquittal, Reed was arrested on an unrelated Warrant on November 13, 1970. Id. In his possession, the police "found weapons and detailed plans for an airplane hijacking and hostage plot designed to win the release of Trimble-Smith, Larry Clark, and another individual from jail." Id. Some time after his arrest, Reed was charged and convicted of an attempted bank robbery in Omaha, Nebraska, on October 20, 1970. Id.

Beginning in 2002, the St. Paul police reopened the investigation into Officer Sackett's murder. Id. Newly discovered evidence led to the indictment of Reed, and Larry Clark ("Clark"), for aiding and abetting, and for conspiring with each other to murder Officer Sackett. Id. Ultimately, the State agreed to the request by Reed and Clark to have their cases severed. Id. Reed was tried first. During the course of Reed's Trial, several witnesses testified against him. As recounted by the Minnesota Supreme Court:

> Trimble-Smith testified that Reed drove her to the phone booth on May 22, 1970, directed her to make the 911 call, and told her what to say. She also told investigators and

testified that after making the call, she and Reed went directly to Clark's residence at 882 Hague. Clark's residence is 102 yards from 859 Hague, where Officer Sackett was shot. Trimble-Smith and Reed remained at Clark's residence for five to seven minutes before going home. Their presence thus coincided with Sackett's shooting roughly 100 yards away.

Joseph Garrett testified that several days before the murder, St. Paul police made a traffic stop and confiscated a gun found in his possession. After a discussion, Garrett told the police officers to "watch the rooftops." Garrett was apprehended and questioned about this remark hours after Officer Sackett's killing. He told police that his "watch the rooftops" comment was a general comment made in anger and that he knew nothing about the killing. * * * Garrett provided no further information until the summer of 2005, when he told investigators that Reed attempted to recruit him in 1970 to help in "bringing down the first pig," which Garrett understood to mean killing a police officer. Garrett testified that he told Reed he would think about it and would let him know. He testified that he avoided Reed after that encounter and that he did not tell police about Reed's proposal earlier because he feared for his life. Garrett also testified that he and Reed were part of an organization called the Black United Front, at the meetings of which Reed advocated protecting "the community" from the police by whatever means necessary, including killing.

Donald Walker testified that in 1969 he attended meetings of the Inner City Youth League at which Reed and Clark would voice "hate talk about the government, the police, and the White Establishment." He also testified that on two occasions he transported a rifle for Reed and Clark in the trunk of his car. Walker, who was familiar with guns from

his military service, testified that the rifle was a single-shot, bolt-action rifle larger than .22-caliber. Forensics determined that Officer Sackett was probably killed with a large caliber single-shot, bolt-action rifle.

John Griffin was involved in the Black Panther movement in the late 1960's. He testified that Reed advocated killing a police officer to put St. Paul "on the map" and possibly to get an official Black Panther chapter. Griffin also testified that at an encounter in the early 1980's Reed told Griffin that "when [Reed] put a bead on that officer * * * he felt powerful," but "when he seen the bullet hitting him, he said he never felt more fucked up in his life."

Id. at 579-80.

As we have noted, Reed was convicted of one (1) Count of Murder in the First Degree, in violation of Minnesota Statutes Section 609.185(c), and one (1) Count of Conspiracy to Commit First Degree Murder, in violation of Minnesota Statutes Section 609.175. Id. at 580.

Following his conviction, Reed filed a direct appeal to the Minnesota Supreme Court.[2] Id. In his Appeal, Reed raised six (6) issues through his counsel including: 1) that, since Reed was a juvenile in 1970, the State District Court could not exercise its jurisdiction over him; 2) that the Court erred in "instructing the jury that it was not

_____

[2]Pursuant to Minnesota Statutes Section 632.14, a person who has been convicted of First Degree Murder can appeal his or her conviction directly to the Minnesota Supreme Court.

required to find that Reed aided and abetted or conspired with Clark" in order to convict Reed; 3) "that the evidence presented at trial was insufficient as a matter of law to support his convictions;" 4) that the Court "erred in failing to give an accomplice corroboration instruction to the jury regarding Trimble-Smith's testimony;" 5) that the Court erred in failing "to instruct the jury about the limited purpose for which evidence of Reed's 'other bad acts' was admitted;" and 6) that the Court "committed reversible error by replaying Trimble-Smith's 911 call to the jury during deliberations because the replay 'unduly emphasized a critical piece of evidence.'" Id. at 579-86.

In addition, Reed filed a pro se brief in which he raised the following grounds for relief: 1) that the prosecution failed to disclose exculpatory evidence to the Jury; 2) that the Court erred in denying him the opportunity to represent himself; 3) "that the prosecution acted improperly by deterring him from testifying with the threat of introducing a prior conviction;" 4) that the Court "abused its discretion by allowing introduction of Reed's involvement with black extremist organizations because this evidence inflamed potential bias and prejudice among members of the jury;" 5) that the Court "erred in failing to give an accomplice corroboration instruction regarding the testimony of [John] Griffin, [Joesph] Garrett, [Donald] Walker, and [Anthony]

Foster;" 6) that the statements Reed made in jail to another inmate "were hearsay and were improperly admitted at trial;" and 7) that, since Trimble-Smith has recanted her testimony, Reed was entitled to a new Trial.  Id. at 587-90.

On August 23, 2007, the Minnesota Supreme Court affirmed Reed's conviction. The Court first considered whether the Trial Court had erred in overruling Reed's objection to the Trial Court's subject matter jurisdiction.  Id. at 579.  Specifically, Reed contended that, under the law in May of 1970, the Juvenile Court had exclusive and original jurisdiction over his case, because he was nineteen (19) years old when he allegedly committed the crime.  Id.  The Court noted that in May of 1970, the Juvenile Court had exclusive and original jurisdiction in two (2) situations:  1) when a child, who was defined as an individual under the age of eighteen (18), was "alleged to be delinquent, a juvenile traffic offender, neglected or dependent;" and 2) when a minor, who was defined as an individual under the age of twenty-one (21), was "alleged to have been a delinquent or a juvenile traffic offender prior to having become eighteen years of age."  Id. at 579-580, quoting Minnesota Statutes Section 260.111, Subdivision 1 (1969).  The Court concluded that, since Reed was over the age of eighteen (18) at the time that he committed his crime, the Juvenile Court would not have had exclusive jurisdiction in 1970.  Id. at 580.  Accordingly, the Court

determined that the Trial Court did not err in overruling Reed's objection to the Court's jurisdiction.  Id.

The Court next addressed Reed's claim that the evidence presented at his Trial was insufficient to support his convictions.  Id. at 581.  As a threshold matter, the Court observed that, since Reed was charged with aiding and abetting, and with a conspiracy, the State was not required to prove that Reed was directly involved in the shooting of Sackett.  Id. at 581-82.  In addressing Reed's claim, the Court noted that "[o]n appeal, the reviewing court must determine whether there was sufficient evidence to justify a finding of guilt beyond a reasonable doubt by a rational trier of fact."  State v. Reed, supra at 581, citing Jackson v. Virginia, 443 U.S. 307, 316 (1979).

In addition, the Court noted that, under Minnesota law, a defendant can only be convicted "on circumstantial evidence alone, [if the evidence] form[s] a 'complete chain which, in light of the evidence as a whole, leads so directly to the guilt of the accused as to exclude beyond a reasonable doubt, any reasonable inference other than that of guilt.'"  Id., quoting State v. Bias, 419 N.W.2d 480, 484 (Minn. 1988).  After a review of the circumstantial evidence, including that Reed advocated the killing of police officers; that Reed and Clark possessed and transported a rifle similar to the

type of weapon used to kill Sackett; that Reed recruited Trimble-Smith to make the 911 call; and that Reed's confession to Griffin were sufficient "to justify a reasonable jury in convicting Reed." Id. at 582.

The Court then addressed Reed's claim that the Trial Court erred "in failing to give an accomplice corroboration instruction to the jury regarding Trimble-Smith's testimony." Id. On review, the Court noted that, if the Trial Court could have considered Trimble-Smith as an accomplice it should have instructed the Jury on accomplice testimony. Id. Therefore, to determine whether the Trial Court erred in not instructing the Jury on accomplice testimony, the Court had to determine "whether Trimble-Smith was Reed's accomplice, and if so, whether the omission was plain error that we may review." Id.

With respect to whether Trimble-Smith could be considered Reed's accomplice, the Court observed that, generally, the test for determining whether an accomplice could be considered an accomplice is if the witness could be charged with the same charge as the accused. Id. However, the Court noted that this factor was complicated by the fact that Trimble-Smith had previously been charged, tried, and acquitted, of the first-degree murder in Sackett's death. Id. Nevertheless, the Court determined that the untrustworthiness of accomplice testimony -- namely, that an accomplice may

testify against the accused in hopes of leniency-- was minimal since Trimble-Smith's prior acquittal meant that the State could not charge her for first degree murder in connection with Sackett's death. Id. at 582-83. Therefore, the State was unable to influence her testimony with promises of leniency as to the aiding and abetting charge. Id. at 583. However, the Court noted that Trimble-Smith could theoretically be charged with conspiring with Reed to murder Sackett. Id. As a result, the Court concluded that failure to give the accomplice testimony was error. Id.

Since Reed did not request, or object to the Trial Court's failure to include the accomplice instruction, the omission was subject to plain error analysis. Id. The Court noted that plain error analysis consists of four (4) factors. Id. "Under the first three factors there must be: (1) an error, (2) that was plain, and (3) that affected the defendant's substantial rights." Id., citing State v. Ramey, 721 N.W.2d 294, 298 (Minn. 2006). "If these three factors are satisfied, the appellate court then considers the fourth factor: whether the error should be addressed 'to ensure fairness and the integrity of the judicial proceedings.'" Id., quoting State v. Ramey, supra at 298, quoting, in turn, State v. Griller, 583 N.W.2d 736, 740 (Minn. 1998).

The Court noted that it had already concluded that the Trial Court had erred, and therefore, quickly turned to address whether the error was plain. Id. The Court

stated that for an error to be plain it must be clear and obvious.  Id. A clear and obvious error is demonstrated if the "'error contravenes case law, a rule, or a standard of conduct.'" Id., quoting State v. Ramey, supra at 302.  In addition, the Court addressed the third factor and explained that "an error affects substantial rights where there is a 'reasonable likelihood' that the absence of the error would have had a 'significant effect' on the jury's verdict." Id.  The Court also noted that Reed bears the burden to demonstrate that the error had a significant effect on the Jury's Verdict. Id. at 583-84.

Although Reed had met the first two (2) factors, the Court found that Reed had failed to demonstrate that the absence of the error would have had a significant effect on the Verdict.  Id. at 584.  Ultimately, the Court determined that  Trimble-Smith's testimony was corroborated by the circumstantial evidence that had been put forth by State.  Id. at 584-85.  Accordingly, the Court concluded that "the omission of the accomplice corroboration instruction does not fall within the plain error scope of review because it did not affect Reed's substantial rights." Id. at 585.

The Court next turned to Reed's claim that the Trial Court's failure to instruct the Jury on the "limited purpose for which evidence of Reed's 'other bad acts was admitted constitutes reversible error." Id.  Specifically, Reed challenged the

admission of guns and notes in his possession, during his arrest in 1970, and of his extremist beliefs.  <u>Id.</u>  Reed conceded that he did not request a limiting instruction, but he claimed that the Trial Court's failure to issue the instruction <u>sua</u> <u>sponte</u> constituted plain error.  <u>Id.</u>  The Court noted that, "'where two or more offenses are linked together in point of time or circumstances so that one cannot be fully shown without proving the other * * * [evidence of the other offense] is admissible.'"  <u>Id.</u>, quoting <u>State v. Wofford</u>, 114 N.W.2d 267, 271 (Minn. 1962).  The Court determined that the State had only used the guns and notes as evidence of the conspiracy to kill Sackett. <u>Id.</u> With respect to Reed's political beliefs, the Court concluded that Reed's beliefs were only used to demonstrate his desire to murder a police officer.  <u>Id.</u> at 586. Lastly, the Court noted that its review of the Record revealed that the guns, notes, and Reed's political beliefs, were only used "to link Reed to Officer Sackett's killing, not to prejudice the jury."  <u>Id.</u>  Accordingly, the Court found that the Trial Court did not commit plain error.  <u>Id.</u>

The Court next addressed Reed's claim that the Trial Court erred by "replaying Trimble-Smith's 911 call to the jury during deliberations because the replay 'unduly emphasized a critical piece of evidence.'"  <u>Id.</u>   Reed maintained that the Jury's request to hear Trimble-Smith's 911 call, after already hearing the same tape three (3)

times during the Trial, demonstrated that the Jury gave undue weight to that one (1) piece of evidence.[3]  Id.  The Court explained that "a jury may request review of the testimony or other evidence after it has retired to deliberate, and the court has discretion to grant the request."  Id., quoting Rule 26.03, Subdivision 19(2), Minnesota Rules of Criminal Procedure.  However, even if the Trial Court erred in allowing the 911 call to be replayed, the error is subject to harmless error review.  Id., citing State v. Courtney, 696 N.W.2d 73, 79-80 (Minn. 2005).

"An error is harmless beyond a reasonable doubt if the guilty verdict actually rendered was surely unattributable to the error."  Id., quoting State v. Courtney, supra at 80.  The Court concluded that the Trial Court did not abuse its discretion in permitting the Jury to rehear the 911 call.  The Supreme Court found that if, as asserted by Reed, the Jury was unsure of what had occurred then it was proper for the Jury to request a replay of the 911 call.  Id.  In addition, the Court was unsure what undue weight the Jury could have given the tape, since the tape did not mention Reed or contain his voice.  Id.  The Court also observed that the Trial Court had given the

---

[3]The Court noted that Reed claimed that the Jury had heard the 911 call four (4) times during the Trial, but the Court's review of the Record revealed that the tape had only been played three (3) times.  See, State v. Reed, 737 N.W.2d 572, 586 n. 5 (Minn. 2007).

Jury a cautionary instruction, prior to the tape's playing, that reminded the Jury to consider the 911 call in context with all of the other evidence that had been presented. Id. Accordingly, the Court determined that the Trial Court did not abuse its discretion in allowing the 911 tape to be replayed. Id. at 587.

The Court then proceeded to address the seven (7) issues raised in Reed's pro se brief. Id. Reed's first claim was that the Trial Court erred when it denied his Motion to dismiss the Indictments because the prosecution had failed to turn over exculpatory evidence. Id. Specifically, Reed argued that "the prosecution allowed John Griffin to testify to the grand jury that Reed had ordered him to kidnap Kelly Day to prevent him from testifying at Trimble-Smith's trial, but that this testimony was false because Day was in police custody at the time." Id. As a threshold matter, the Court explained that a criminal defendant has a heavy burden when he seeks to overturn an Indictment. Id. The Court concluded that the fact that Day was in police custody was only remotely related to Reed's involvement in Sackett's murder, and could not be considered exculpatory.[4] Id. Moreover, the Court found that Reed did not reveal whether "he knew Day was in custody or believed it was impossible to

_____

[4]Although the Court did not have the Grand Jury transcript, it assumed, for the sake of argument, that Reed's account was accurate. See, State v. Reed, 737 N.W.2d 572, 587 (Minn. 2007).

kidnap him, so even if we were satisfied that Day was in custody at the time in question it would not necessarily render Griffin's testimony false." Id. Accordingly, the Court found it highly unlikely that Griffin's testimony affected the Grand Jury's decision to indict and, as a result, the Court found that the Trial Court did not commit error. Id.

Then the Court turned to Reed's claim that he was denied the right to represent himself. Id. Although Reed contended that he was denied the right to represent himself, the Court found that to be a mischaracterization of the Record, because Reed's Motion was for the appointment of substitute counsel. Id. The Court found that the Trial Court denied Reed's Motion because it found the Motion to be untimely and further, the Court found Reed's counsel competent and prepared. Id. In addition, the Court noted that, despite Reed's arguments to the contrary, Reed's counsel had met with him on numerous occasions. Id. The Court also reasoned that, "even if Reed was genuinely dissatisfied with his counsel he offered no excuse for delaying his request until the morning of trial," and further, that "Reed's motion was a transparent effort to delay his trial * * *." Id. at 588. Therefore, the Court found that the Trial Court had not erred. Id.

Next, the Court addressed Reed's claim that the prosecution had improperly deterred him from testifying, by threatening to introduce his prior conviction for attempted bank robbery in Omaha, Nebraska. Id. As a preliminary matter, the Court noted that evidentiary rulings are within the Trial Court's discretion, and that the Trial Court would not be reversed on such rulings absent a clear abuse of discretion. Id., citing State v. Grayson, 546 N.W.2d 731, 736 (Minn. 1996). The Court noted that the State did not seek to introduce the conviction during its case-in-chief, but reserved the right to use the conviction to demonstrate "Reed's intent in prompting the 911 call and to impeach Reed's character if he put it in issue." Id. Reed did not respond to the State's argument, but "reserved his right to argue that the conviction was inadmissible 'at the appropriate time.'" Id.

The Trial Court briefly mentioned that it did not believe that the prior conviction could be admitted pursuant to the standards set forth in State v. Spreigl, 139 N.W.2d 167 (Minn. 1965).[5] However, at that time, the Trial Court did not make a

---

[5]In State v. Spreigl, 139 N.W.2d 167, 173 (Minn.1965), the Supreme Court held as follows:

> [W]here the state seeks to prove that an accused has been guilty of additional crimes and misconduct on other occasions, although such evidence is otherwise admissible

(continued...)

- 17 -

ruling on the admissibility of Reed's prior conviction.  Id.  The next day, but prior to

the Jury being called, Reed disclosed that he intended to waive his right to testify

because he believed that his prior conviction would be used to impeach his testimony.

Id.  The Trial Court clarified its earlier statement by informing Reed that the Court

would not allow the State to use the prior conviction to cross-examine Reed.  Id.

However, the Trial Court informed Reed that, if his character was placed into

evidence, that the Court believed that there was "a strong likelihood that it would be

appropriate to allow the Spriegl evidence."  Id.  However, the Trial Court stated that

it had yet to make a final decision on that question.  Id.

The Supreme Court determined that the Trial Court had adequately explained

to Reed that the Court had yet to make a decision on whether the prior conviction

---

[5](...continued)
> under some exception to the general exclusionary rule, it
> shall not hereafter be received unless within a reasonable
> time before trial the state furnishes defendant in writing a
> statement of the offenses it intends to show he has
> committed, described with the particularly [sic] required of
> an indictment or information, subject, however, to the
> following exceptions:  (a) Offenses which are part of the
> immediate episode for which defendant is being tried; (b)
> offenses for which defendant has previously been
> prosecuted; and (c) offenses which are introduced to rebut
> defendant's evidence of good character.

would be admitted.  Id. at 589.  In addition, the Court found that Reed could not challenge the Trial Court's ruling on the admissibility of his prior conviction, because the Court made no such decision. Id.  Therefore, the Supreme Court construed Reed's claim as challenging the Trial Court's decision to reserve "its ruling on the conviction until it heard Reed's case-in-chief."  Id.

Since Reed had failed to object to the Trial Court's decision to reserve its ruling on the admissibility of the prior conviction, the Supreme Court subjected that decision to plain error analysis.  Id.  The Court noted that Reed had failed to explain how the Trial Court's decision, to reserve its ruling, could be considered error.  Id.  In addition, the Court noted that Reed could have requested an evidentiary ruling, but that Reed never made such a request.  Id. Lastly, the Supreme Court observed that "[d]efendants 'often make decisions not to testify based on the potential damage that the prior convictions could inflict on their credibility,'" and "'[t]he mere fact that a trial court would allow impeachment evidence if a defendant chooses to testify does not necessarily implicate his constitutional right to testify in his own defense.'" Id., citing State v. Glasser, 505 N.W.2d 62, 68 (Minn. 1993).  Accordingly, with respect to the Trial Court's decision to reserve its ruling on the admissibility of Reed's prior conviction, the Supreme Court found no error.  Id.

Next, the Supreme Court proceeded to Reed's claim that the Trial Court erred by "allowing introduction of Reed's involvement with black extremist organizations because this evidence inflamed potential bias and prejudice among members of the jury." Id. The Court held that the State's theory could only be demonstrated "against the backdrop of late 1960's racial tension and Reed's motive could only be understood in the context of the organizations in which he apparently advocated killing police officers." Id. at 590. Therefore, the Supreme Court concluded that the Trial Court did not error.

The Supreme Court also rejected Reed's claim that the Trial Court had erred in failing to give an accomplice corroboration instruction, with respect to the testimony of Joseph Garrett, John Griffin ("Griffin"), Donald Walker ("Walker"), and Anthony Foster. Id. The Court determined that Reed had failed to demonstrate that those witnesses could be considered accomplices. Id. Accordingly, the Court found no err in the Trial Court's decision to refrain from giving that instruction. Id.

In addition, the Supreme Court rejected Reed's claim that the Trial Court erred in admitting statements that he had made to another inmate because, in Reed's view, those statements were hearsay. Id. The Court noted that "[a] statement by party offered against him at trial is not hearsay." Id., citing Rule 801(d)(2)(A), Minnesota

Rules of Evidence.  Therefore, the Court found no error in the admission of those statements by Reed.  Id.

The Court then proceeded to Reed's assertion that he was entitled to a new Trial because Trimble-Smith had recanted her testimony shortly after Reed's conviction. Id.  In support of his claim Reed offered the Affidavit of Cherra Trimble ("Cherra"), who is the daughter of Trimble-Smith.  Id.  In her Affidavit, Cherra disclosed that Trimble-Smith had admitted that she had lied during her testimony because the investigators had given her money, and had promised her additional rewards.  Id.  The Court noted that, in order to be entitled to a new Trial, Reed had to establish, by a preponderance of the evidence, the following three (3) factors:  "(1) the court must be reasonably well-satisfied that the testimony in questions was false; (2) without that testimony the jury might have reached a different conclusion; and (3) the petitioner was taken by surprise at trial or did not know of the falsity until after the trial."  Id., quoting Opsahl v. State, 677 N.W.2d 414, 422-23 (Minn. 2004).  The Court concluded that Reed had failed to establish any of the three (3) prongs of that test, and accordingly, it determined that Cherra's Affidavit did not entitle Reed to a new Trial. Id.  As a consequence of the foregoing rulings, the Court affirmed Reed's conviction.

On September 24, 2008, Reed filed his current Amended Petition for Federal Habeas Corpus, under Section 2254.[6] See, <u>Amended Petition</u>, supra. In his Amended Petition, Reed raises seven (7) claims: 1) that the State used false evidence to convict him; 2) that his Due Process rights were violated when the Trial Court denied his request to represent himself; 3) that the State denied him his right to testify, because it sought to admit evidence of his prior convictions; 4) that there was insufficient evidence to support his conviction; 5) that his Due Process rights were violated when the Trial Court amended the Indictment through Jury Instructions that directed the Jury, that it did not have to find that Reed aided, abetted or conspired with Clark, in order for Reed to be guilty; 6) that the State withheld exculpatory evidence; and 7) that Minnesota Supreme Court violated his Due Process and Equal Protection rights

───────────────────

[6]On August 22, 2008, Reed filed his original Petition for Writ of Habeas Corpus. See, <u>Docket No. 1</u>. On September 8, 2008, we issued a Report which recommended the dismissal of Reed's Petition, because his Petition included exhausted and non-exhausted claims. See, <u>Docket No. 5</u>, at 7-9. However, we noted that Reed could file an amended Petition which included only his fully exhausted claims. <u>Id.</u> at 9. Subsequently, on September 24, 2008, Reed submitted an Amended Petition. See, <u>Docket No. 6</u>. Thereafter, on October 9, 2008, the District Court, the Honorable Patrick J. Schiltz presiding, citing Reed's amended Petition, declined to adopt our Recommendation, and remanded his Amended Petition for further consideration. See, <u>Docket No. 8</u>.

when it found that the Trial Court did not err when it failed to give an accomplice instruction as to Trimble-Smith.  Id. at 7-11.

In response, the Respondent advances three (3) arguments:  1) that Grounds One, Three, Five, Six, and Seven of Reed's Amended Petition are barred, because Reed never presented a Federal law claim to the State Courts; 2) that Reed was not denied Due Process rights when he was denied the right to represent himself, because Reed did not make any such request; and 3) that Reed's convictions were supported by sufficient facts.  See, Respondent's Return, Docket No. 13, at 10-17.

## III. Discussion

A.      Standard of Review.  "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Title 28 U.S.C. §2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62,68 (1991).  As a result, before a Writ may issue, a petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.  Id.; see also, Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir.

2005); <u>Newton v. Kemna</u>, 354 F.3d 776, 782 (8th Cir. 2004), cert. denied, 543 U.S. 979 (2004); <u>Robinson v. Leapley</u>, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in a State Court. See, <u>Antiterrorism and Effective Death Penalty Act of 1996</u>, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

<u>Title 28 U.S.C. §2254(d)</u>.

The Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two (2) separate grounds on which

a Federal Court may grant Habeas relief to claims adjudicated in the State Courts. See,

Williams v. Taylor, 529 U.S. 362 (2000).

In this respect, the Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the

"unreasonable application" clause, requires a Federal Court to "ask whether the state

court's application of clearly established federal law was objectively unreasonable."

Id. at 409; see also, Underdahl v. Carlson, 462 F.3d 796, 798 (8th Cir. 2006); Davis v.

Norris, 423 F.3d 868, 874-75 (8th Cir. 2005); LaFrank v. Rowley, 340 F.3d 685, 689

(8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Davis v. Norris, supra at 875; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law, and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations. See, e.g., Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed). Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable. "'[O]bjectively unreasonable' does not mean 'clear error,' because '[t]hese two standards * * * are not the same,'" and "[t]he gloss of

clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." <u>LaFrank v. Rowley</u>, supra at 689, quoting <u>Lockyer v. Andrade</u>, supra at 75.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations rendered by a State Tribunal, which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. See, <u>Guinn v. Kemna</u>, 489 F.3d 357, 359 (8th Cir. 2007); <u>Lupien v. Clarke</u>, supra at 618; <u>Green v. Norris</u>, 394 F.3d 1027, 1029 (8th Cir. 2005). Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Kinder v. Bowersox</u>, 272 F.3d 532, 538 (8th Cir. 2001); <u>McDonald v. Bowersox</u>, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" <u>Kinder v. Bowersox</u>, supra at 538, citing <u>Title 28 U.S.C. §2254(e)(1)</u>.

B.    <u>Legal Analysis</u>.  The Respondent contends that Reed has defaulted his claims for relief with respect to Grounds One, Three, Five, Six, and Seven, because he failed to raise a Federal claim before the Minnesota Supreme Court.  See, <u>Return</u>, supra at 10-11, 13-17.  Accordingly, we turn to consider whether Reed has exhausted his available State Court remedies.

1.    <u>Exhaustion of Remedies</u>.

a.    <u>Standard of Review</u>.  It is well-established that a Federal Court will not entertain a Petition for a Writ of Habeas Corpus on behalf of a State prisoner unless the prisoner has first exhausted all available State Court remedies.  See, <u>Title 28 U.S.C. §2254(b)</u>; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982); see also, <u>Armstrong v. State of Iowa</u>, 418 F.3d 924, 925-26 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006)("Federal habeas relief is available to a petitioner after he 'has exhausted the remedies available in the courts of the State.'"), quoting <u>Title 18 U.S.C. §2254(b)(1)(A)</u>.

The exhaustion of State remedies requirement is based on principles of comity and federalism, as its purpose is to ensure that State Courts are given the first opportunity to correct alleged Federal constitutional errors that have been raised by State prisoners.  See, <u>O'Sullivan v. Boerckel</u>, supra at 844; <u>Duncan v. Henry</u>, 513 U.S.

364, 365-66 (1995); <u>Rose v. Lundy</u>, supra at 518-19; <u>Curtiss v. Mount Pleasant Correctional Facility</u>, 338 F.3d 851, 55 (8th Cir. 2003), cert. denied, 540 U.S. 1060 (2003)("The exhaustion requirement serves AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'"), quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a prisoner must fairly present his constitutional claims to the highest available State Court before seeking relief in Federal Court.  See, <u>O'Sullivan v. Boerckel</u>, supra at 845; <u>Duncan v. Henry</u>, supra at 365-66; see also, <u>Dixon v. Dormire</u>, 263 F.3d 774, 777 (8th Cir. 2001); <u>McCall v. Benson</u>, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.").  The exhaustion of State remedies requires more than the fact that the Federal Habeas applicant has been through the State Courts.  See, <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971).

To serve the purposes of the Rule, the State Courts must have the first opportunity to hear the claim, which is sought to be vindicated in a Federal Habeas proceeding.  See, <u>Picard v. Connor</u>, supra 275-76.  The State Court has an opportunity

to hear a claim, when the claim has been fairly presented, by reference to a specific Federal constitutional right, a Federal case, or a State case, which raises a pertinent Federal constitutional issue. See, Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005), cert. denied, 546 U.S. 844 (2005), quoting Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir. 1999), cert. denied, 528 U.S. 846 (1999); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996). Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts. Id. "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." Id.; see also, Abdullah v. Groose, supra at 412, citing Duncan v. Henry, supra at 366.

Under Minnesota law, "[o]nce a defendant has taken a direct appeal, all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petition for post-conviction relief." Cooper v. State, 745 N.W.2d 188, 190-91 (Minn. 2008), quoting State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). If the Petitioner has failed to exhaust his State Court remedies, and if the Court to which he should have presented his claim would now find it procedurally barred, then the claim is procedurally defaulted. See, Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), denied, 516 U.S.

1056 (1996), citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991). In addition, if a Petitioner has attempted to raise a claim in State Court, but the State Court determines that the Petitioner has defaulted the claim under a State procedural rule, Federal Courts will not, as a general proposition, consider the claim on Habeas review. See, <u>Coleman v. Thompson</u>, supra at 750; <u>Sloan v. Delo</u>, supra at 1378.

Accordingly, "[a] default under a state procedural rule bars consideration of a federal claim presented to the state courts if the last state court to review the claim specifically rested its decision on an adequate and independent state ground * * *." <u>Sloan v. Delo</u>, supra at 1378, citing <u>Harris v. Reed</u>, 489 U.S. 255, 260-63 (1989). A claim that is procedurally defaulted under State law, however, is barred from Federal review only if the State procedural rule is firmly established and regularly followed. See, <u>Oxford v. Delo</u>, 59 F.3d 741, 744 (8th Cir. 1995), cert. denied, 517 U.S. 1124 (1996), citing <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991); see also, <u>Harris v. Reed</u>, supra at 262 ("[A]n adequate and independent finding of procedural default [as a matter of State law] will bar federal habeas review of the federal claim.").

Although the State Court procedural bar is "nearly absolute," a Petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence. <u>Reagan</u>

v. Norris, 279 F.3d 651, 656 (8th Cir. 2002), quoting Coleman v. Thompson, supra at 750.

       b.     Legal Analysis.  As noted, the Respondent argues that Grounds One, Three, Five, Six, and Seven of Reed's Amended Petition, are barred because he never presented a Federal law claim before the Minnesota Supreme Court.  See, Respondent's Return, supra at 10-11, 13-17.  For the sake of simplicity, we first consider whether those claims are defaulted and, if they are defaulted, then we consider whether Reed has demonstrated cause and prejudice, or his actual innocence, so as to excuse that default.

       1)     Procedural Default.

       a)     Standard of Review.  In Baldwin v. Reese, 541 U.S. 27, 30 (2004), the United States Supreme Court addressed the issue of fair presentation and held that, "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court decision, that does so."  Id. at 32.

While he is not required to have spelled out every nuance of his Federal constitutional claims to the Minnesota Supreme Court, Reed does have to give fair

notice that, indeed, there is a Federal constitutional dimension to his claims.  See,

Duncan v. Henry, supra at 366 ("If a habeas petitioner wishes to claim that an

evidentiary ruling at a state court trial denied him due process of law guaranteed by

the Fourteenth Amendment, he must say so, not only in Federal Court, but in state

court."); Johnson v. State of Minnesota, 2006 WL 2860817 *2-3 (D. Minn., October

4, 2006)(finding procedural default when petitioner cited only one State Court case,

and failed to specify what Federal issues were relevant in Petition for Further Review

to the Minnesota Supreme Court); Jones v. Jerrison, 20 F.3d. 849, 854 (8th Cir.

1994)("The federal legal theory or theories must plainly appear on the face of the

petitioner's state-court briefs.").

"[F]ederal habeas corpus relief does not lie for errors of state law * * * [and]

it is not the province of a federal habeas corpus court to reexamine state-court

determinations on state-law questions."  Evenstad v. Carlson, 470 F.3d 777, 782 (8th

Cir. 2006), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  "To obtain habeas

relief, [the Petitioner] must be able to point to the Supreme Court precedent he thinks

the Minnesota state courts acted contrary to or applied unreasonably."  Id. at 783,

citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234

F.3d 1055, 1057 (8th Cir. 2000), cert. denied, 534 U.S. 903 (2001).

b)    <u>Legal Analysis</u>.

I.    <u>Ground One:  Recantation by Trimble-Smith</u>.  In his

<u>pro se</u> appellate brief, Reed argued that Trimble-Smith's recantation of her testimony

entitled him to a new Trial.  See, <u>Respondent's Return</u>, <u>Docket No. 15</u>, Exhibit 5, at

5.  However, Reed did not reference a Federal case, a Federal constitutional right, or

a Federal statutory right, in support of his claim.   Moreover, the Minnesota Supreme

Court  apparently  did  not  consider  itself  to  be  on  notice  of  any  possible  Federal

Constitutional claim, since it confined its analysis to Minnesota State law.  See, <u>State

v. Reed</u>, supra at 590.  Specifically, the Court concluded that Reed had failed to meet

the three (3) prong test set that is forth in <u>Larrison v. United States</u>, 24 F.2d 82, 87-88

(7th Cir. 1928), overruled by <u>United States v. Mitrione</u>, 357 F.3d 712, 717-18 (7th Cir.

2004).[7]  Since Reed had failed to meet that test, the Court concluded that Trimble-

_____

[7]Although the Court relied on a test from a Federal case, in order to determine
whether Trimble-Smith's recantation entitled Reed to a new Trial, it did not rely on
any Federal right, or law, in reaching its conclusion that Reed was not entitled to a
new Trial.   See, <u>State v. Reed</u>, 737 N.W.2d 572, 590 (Minn. 2007).   Moreover,
<u>Larrison</u> was overruled by the Seventh Circuit in <u>United States v. Mitrione</u>, 357 F.3d
712, 717-18 (7th Cir. 2004), in order to bring Seventh Circuit jurisprudence into
conformity with several other Circuits, including the Eighth Circuit, by requiring a
showing "that the jury would **probably** have reached a different verdict had the
perjury not occurred," rather than the <u>Larrison</u> requirement of a showing "that the jury
**might** have reached a different verdict if it knew the testimony was false or if it hadn't
(continued...)

Smith's recantation did not entitled Reed to a new Trial.  See, <u>State v. Reed</u>, 737 N.W.2d 572, 590 (Minn. 2007).

Given that Reed's claim focused exclusively on State law, we see no reason that the Minnesota Supreme Court could have surmised that Reed was raising a Federal claim -- that is, one predicated on Federal law.  Therefore, we find that Reed did not fairly present a Federal claim to the Minnesota Supreme Court as to Ground One, and accordingly, as to that Ground, his claim is procedurally defaulted as Minnesota State law prevents him from raising that claim in State Court.  See, <u>Williams v. State</u>, 764 N.W.2d 21, 27 (Minn. 2009)("If a direct appeal has been taken on a conviction, all claims raised in that appeal, and all claims known or that should have been known at the time of that appeal, are procedurally barred and will not be considered in a subsequent petition for postconviction relief."), citing <u>State v. Knaffla</u>, supra at 741, and <u>Leake v. State</u>, 737 N.W.2d 531, 535 (Minn. 2007).

---

(...continued)

heard the testimony."  [Emphases in original].  Obviously, the second prong of the test, that is applied in <u>Larrison</u>, is more lenient than that now substituted by <u>Mitrione</u>. Nevertheless, Minnesota Courts still apply the more lenient <u>Larrison</u> standard, which confirms that the standard is one of State, and not of Federal law.  See, e.g., <u>Opsahl v. State</u>, 710 N.W.2d 776, 782 and n. 3 (Minn. 2006).  Indeed, Reed referenced only State law in support of his claim that he was entitled to a new Trial.  See, <u>Respondent's Return</u>, <u>Docket No. 15</u>, Exhibit 5 at 6 (requesting that the Court grant him a new Trial on the basis of <u>Opsahl v. State</u>, supra.

ii.     <u>Ground Three:  Reed's Right to Testify</u>.  Reed claims that his right to testify was violated because he believed that the Trial Court would allow his testimony to be impeached by his prior attempted robbery conviction.  See, <u>Respondent's Return</u>, supra, Exhibit 5 at 3.  However, Reed did not contend that any Federal Constitutional right, Federal case law, or a Federal Statutory right, supported that claim.   Instead, Reed relied upon Minnesota State case law, as well as Rule 609, Minnesota Rules of Evidence, to support his claim.[8]  See, <u>Respondent's Return</u>, <u>Docket No. 15</u>, Exhibit 5 at 3.  During its review, the Minnesota Supreme Court relied exclusively upon State law in concluding that the Reed had failed to demonstrate that the Trial Court's decision to reserve its ruling was plain error.   See, <u>State v. Reed</u>, supra at 589.  Accordingly, since Reed is now prevented from bringing his Federal right to testify claim in State Court we conclude that the claim is also defaulted.

---

[8]Rule 609(a), Minnesota Rules of Evidence, provides as follows:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by * * * imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

iii.    Ground Five: Amendment of the Indictment.    Reed maintains that his Due Process rights were violated by the Trial Court's instruction to the Jury that it did not need to find that Reed aided and abetted, or conspired with Clark, in order to be guilty, which had the necessary effect of amending the Indictment sua sponte.  See, Amended Petition, supra at 9.  Although Reed contends that his Due Process rights were violated, his appellate brief to the Minnesota Supreme Court is barren of any reference to a Federal Due Process claim, and relies almost exclusively on Minnesota State law.  See, Respondent's Return, supra, Exhibit 3 at pp. 32-40.[9]

Moreover, the Minnesota Supreme Court did not glean a Federal law claim from Reed's brief, as it relied upon State law, and the Minnesota Rules of Evidence, in rejecting Reed's claim.  See, State v. Reed, supra at 580-81.  The Court noted that,

_____

[9]Reed's Appellate Brief does mention that both the State and Federal "constitutions guarantee criminal defendants the right to have their juries receive clear and complete instructions[.]"  Respondent's Return, supra, Exhibit 3 at 34.  However, beyond that fleeting reference to the Federal Constitution, the brief is bereft of any assertion that Federal Due Process rights, or Federal law, had been violated in this respect.

Reed's Appellate Brief also relied upon a case from the State of Rhode Island, see, State v. DeSanto, 603 A.2d 744 (R.I. 1992), but Desanto did not concern a Federal law, or Federal Constitutional right.  In addition, the Minnesota Supreme Court rejected the application of DeSanto to Reed's claim.  See, State v. Reed, 737 N.W.2d 572, 580-81 (Minn. 2007).

although the State did not move for a formal amendment of the Indictment, the Trial Court was within its discretion to amend the Indictment since no additional or different offense was charged, and because Reed's substantive rights were not violated by the amendment. See, <u>State v. Reed</u>, supra at 580-81, citing <u>Rule 17.05, Minnesota Rules of Criminal Procedure</u>. Therefore, we find that Reed's challenge to the Trial Court's implicit amendment to the Indictment to be procedurally defaulted.

    iv. <u>Ground Six:  Exculpatory Evidence:  Griffin's Testimony</u>. Reed argues that the Trial Court erred in denying his Motion to Dismiss the Indictment since he had produced evidence that the State did not disclose allegedly exculpatory evidence to the Grand Jury.  See, <u>Amended Petition</u>, supra at 4. Specifically, Reed contends that the State failed to inform the Grand Jury that Day was in police custody, when Reed ordered Griffin to kidnap Day.  <u>Id.</u>  As with his previous claims, Reed did not assert a Federal claim as to this Ground, and cited only State case law to support his claim.  See, <u>Respondent's Return</u>, supra, Exhibit 5 at 1. Nor did the Minnesota Supreme Court find that Reed had raised a Federal claim.  The Court determined, pursuant to Minnesota law, that Reed had not met his heavy burden in order to invalidate an Indictment, because his alleged directive to kidnap Day was "only remotely related to Reed's involvement in Officer Sackett's killing and is not

exculpatory." <u>State v. Reed</u>, supra at 587. Accordingly, we find that Reed's exculpatory evidence claim, as it relates to Griffin's Grand Jury testimony, is procedurally also defaulted.

In addition, Reed claims that "the prosecution failed to inform the jury that Ms. Trimble's testimony against the petitioner was in direct conflict with her 1972 trial testimony for the murder of Officer Sackett." <u>Amended Petition</u>, supra at 4. However, that claim was not presented to the Minnesota Supreme Court and, as a result, it is also defaulted.

v. <u>Ground Seven: Accomplice Corroboration Instructions</u>. Reed contends that Minnesota Supreme Court violated his Due Process and Equal Protection rights when it determined that the Trial Court's "failure to give an accomplice instruction [for Trimble-Smith's testimony] was not reversible error."[10] <u>Amended Petition</u>, supra at pp. 4-5. However, the question is not whether Reed raised a Federal claim in his current Amended Petition but, rather, whether he presented or framed his claim in such a manner so as to fairly present a Federal claim to the

---

[10]Although Reed contends that the Minnesota Supreme Court violated his Due Process and Equal Protection rights in ruling that the Trial Court did not err, we have construed his claim to be leveled against the Trial Court's decision not to present the Jury an accomplice instruction concerning Trimble-Smiths's testimony.

Minnesota Supreme Court.   Here, we find that Reed did not frame his argument in such a manner as to place the Minnesota Supreme Court on notice that he was raising either a Federal Due Process, or a Federal Equal Protection claim.

Nor did the Minnesota Supreme Court believe that Reed was asserting a Federal claim, as it conducted a through and detailed analysis of Minnesota law in rejecting Reed's argument.  See, <u>State v. Reed</u>, supra at 584.  The Court noted that, although the Trial Court should have instructed the Jury on accomplice testimony,  Reed had failed to meet his burden to establish "that absence of the error would have had a significant effect on the verdict."  <u>Id.</u>  In addition, the Court determined that Trimble-Smith's testimony was corroborated by the State's evidence.    <u>Id.</u> at 584-85.  Therefore, since Reed's Federal claim was never fairly presented for the Minnesota Supreme Court's review, we conclude that it has been defaulted.

Since we have found that Reed's claims in Grounds One, Three, Six, Seven, and Eight, have been defaulted, we proceed to consider whether he has demonstrated cause and prejudice, or that a fundamental miscarriage of justice would occur, if these claims were not considered.

2)   <u>Cause and Prejudice, or a Fundamental Miscarriage of Justice</u>.

As noted, a claim that has been procedurally defaulted in the State Courts will not be entertained in a Federal Habeas proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, that there would be a "fundamental miscarriage of justice" if the Federal Court declined to consider that claim. See, <u>Coleman v. Thompson</u>, supra at 750. "It is well-established that federal courts will not address procedurally defaulted claims on the merits unless a petitioner can show either cause and prejudice to excuse the default or actual innocence." <u>Schliemann v. Fabian</u>, 2007 WL 1201621 at *3 (D. Minn., February 13, 2007), citing <u>Clemons v. Leubbers</u>, 381 F.3d 744, 750 (8th Cir. 2004); <u>Reagan v. Norris</u>, supra at 656; <u>Carney v. Fabian</u>, 441 F. Supp. 2d 1014, 1023 (D. Minn. 2006), citing <u>Coleman v. Thompson</u>, supra at 750.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on **new evidence**, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995)[emphasis added], cert. denied, 516 U.S. 1161 (1996), quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his criminal

prosecution; he must, instead, offer some new evidence which affirmatively demonstrates that he is truly innocent of the crime for which he was convicted.

Here, Reed has failed to proffer any **new** evidence that would require us to re-examine his claims so as to avoid a fundamental miscarriage of justice, nor has he provided any cause, or prejudice, that would excuse his procedural default. In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the State's highest Court in a timely, and procedurally proper manner. See, <u>Coleman v. Thompson</u>, supra at 753 ("'[C]ause' under the cause and prejudice test is something **external** to the petitioner, something that cannot fairly be attributed to him * * * [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available * * * or that some interference by officials made compliance impracticable")[emphasis in original], quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Reed has not identified any "external cause" that could excuse his failure to present any of his defaulted claims to the Minnesota Supreme Court.[11]

---

[11]Since Reed has plainly failed to satisfy the cause requirement, it is unnecessary to consider the prejudice component. See, <u>Cagle v. Norris</u>, 474 F.3d 1090, 1099 (8th Cir. 2007)("If a prisoner fails to demonstrate cause, the court need not address prejudice."), citing <u>Mathenia v. Delo</u>, 99 F.3d 1476, 1481 (8th Cir. 1996) cert. denied,

(continued...)

Accordingly, we recommended that the claims raised in Grounds One, Three, Five, Six, and Seven, be dismissed with prejudice, and we turn to address Reed's non-defaulted claims.

2. <u>Reed's Non-Defaulted Claims</u>.

In his Amended Petition, Reed raises two (2) non-defaulted claims: 1) that his Due Process rights were violated when the Trial Court denied his Motion to represent himself; and 2) that the State presented insufficient evidence to support his conviction. See, <u>Amended Petition</u>, supra at pp. 2-3. We examine each in turn.

---

[11](...continued)
sub. <u>nom.</u> <u>Mathenia v. Bowersox</u>, 521 U.S. 1123; <u>Ashker v. Class</u>, 152 F.3d 863, 871 (8th Cir. 1998)(when a Habeas petitioner "has not shown adequate cause to overcome the procedural bar * * * we need not consider the issue of actual prejudice"); <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998) (same). Nevertheless, we find no reason to believe that Reed could satisfy the prejudice requirement, so as to excuse his defaulted claims.

a.     Right to Self-Representation.

1)     Standard of Review. "The Sixth Amendment provides a criminal defendant with the right to counsel, as well as the right to waive counsel and proceed pro se." United States v. Ladoucer, 573 F.3d 628, 633 (8th Cir. 2009), citing Faretta v. California, 422 U.S. 806, 807 (1975); see also, United States v. Kiderlen, 569 F.3d 358, 364 (8th Cir. 2009); United States v. Armstrong, 554 F.3d 1159, 1165 (8th Cir. 2009), cert. denied, --- U.S. ---, 129 S.Ct. 2805 (2009). "An accused has a constitutional right to self-representation but must knowingly, intelligently, and voluntarily waive the right to counsel." Wilkins v. Bowersox, 145 F.3d 1006, 1011 (8th Cir. 1998), cert. denied 552 U.S. 1094 (1999), citing Faretta v. California, supra 819-21, and Abdullah v. Groose, 75 F.3d 408, 412 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996). Accordingly, "[i]t is * * * settled law that a criminal defendant has the right to waive his right to counsel at trial and to represent himself as long as the waiver is both voluntary, and intelligently and knowingly made." United States v. Keiser, --- F.3d ---, 2009 WL 2615752 at *4 (8th Cir., August 27, 2009), quoting Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1988).

In addition, the request to waive the right to counsel, in order to represent oneself, must be clear and unequivocal. See, United States v. Eldman, 458 F.3d 791,

808 (8th Cir. 2006); <u>United States v. Webster</u>, 84 F.3d 1056, 1062 (8th Cir. 1996)( "A defendant who wishes to waive his right to counsel, and thereby to proceed pro se, must do so clearly and unequivocally."), citing <u>Hamilton v. Groose</u>, 28 F.3d 859, 862-63 (8th Cir. 1994), cert. denied, 513 U.S. 1085 (1995); see also, <u>United States v. Light</u>, 406 F.3d 995, 998-99 (8th Cir. 2005)("A defendant who wishes to waive his right to counsel, and thereby proceed pro se, must do so clearly and unequivocally."); quoting <u>United States v. Webster</u>, supra at 1062.

   2) <u>Legal Analysis</u>. Reed urges that the Minnesota Supreme Court acted contrary to established Federal law, when it concluded that the Trial Court did not violate his Sixth Amendment right to self-representation. See, <u>Amended Petition</u>, supra at p. 2. Reed asserts that he "voluntarily and intelligently elected to proceed without counsel to represent himself during trial." <u>Id.</u> We disagree.

  In its decision, the Minnesota Supreme Court found that Reed did not request to represent himself prior to his Trial. See, <u>State v. Reed</u>, supra at 587. The Court determined that the Record established that Reed's Motion "was to appoint substitute counsel, not to represent himself," and that the Trial Court denied Reed's Motion because the Trial Court found Reed's counsel to be competent and prepared. <u>Id.</u>

After reviewing the Record, the Supreme Court determined that the Trial Court had not erred. Id. The Court noted that Reed had failed to demonstrate that his counsel was inadequate, and that Reed had "offered no excuse for delaying his request until the morning of trial." Id. at 587-88. The Court concluded that "Reed's motion was a transparent effort to delay his trial and was properly denied." Id. at 588.

Based upon the Record before us, we are unable to conclude that the Minnesota Supreme Court acted contrary to Federal law. As a threshold matter, we agree with the Minnesota Supreme Court's finding that Reed did not request to represent himself but, rather, moved for substitute counsel. Despite Reed's argument to the contrary, the Trial transcript does not disclose any instance where Reed requested to represent himself, nor did he clearly or unequivocally waive his right to counsel. See, Respondent's Return, supra, Exhibit 6 at pp. 86-93. Instead, the Record reveals that Reed was unhappy with his counsel, and that he wanted to obtain new counsel as a means to delay his Trial. Id.

Even if we were to construe Reed's claim as challenging the Trial Court's decision to deny his request for the appointment of substitute counsel, we would still find no error. Generally, "[a] criminal defendant does not have the absolute right to counsel of his own choosing." United States v. Espino, 317 F.3d 788, 798 (8th Cir.

2003), citing <u>Carey v. State of Minnesota</u>, 767 F.2d 440, 441 (8th Cir. 1985), cert. denied, 474 U.S. 1010 (1985), and <u>Williams v. Nix</u>, 751 F.2d 956, 959 (8th Cir. 1985), cert. denied, 471 U.S. 1138 (1985).   In addition, "[a] motion to substitute court appointed counsel is committed to the district court's sound discretion." <u>United States v. Webster</u>, 84 F.3d 1056, 1062 (8th Cir. 1996), citing <u>Hunter v. Delo</u>, 62 F.3d 271, 274 (8th Cir. 1995).  Indeed,"'[l]ast-minute requests to substitute defense counsel are not favored.'" <u>United States v. Armstrong</u>, 112 F.3d 342, 345 (8th Cir. 1997), quoting <u>United States v. Klein</u>, 13 F.3d 1182, 1185 (8th Cir. 1994), cert. denied, 512 U.S. 1226 (1994); see also, <u>United States v. Webster</u>, supra at 1062.

"When there is not a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the defendant and his counsel of record, denial of a last-minute request for a substitution is appropriate."  <u>United States v. Nguyen</u>, supra at 1134, citing <u>United States v. Armstrong</u>, supra at 345; see also, <u>United States v. Webster</u>, supra at 1062 ("To prevail on the request [for substitute counsel], a criminal defendant must demonstrate 'a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.'"), quoting <u>United States v. Long Crow</u>, 37 F.3d 1319, 1324 (8th Cir. 1994), cert. denied, 513 U.S. 1180 (1995).

As noted by the Minnesota Supreme Court, the Trial Court found that the performance of Reed's attorneys "was competent, prepared, and zealous." <u>State v. Reed</u>, supra at 587. Nor did Reed make a sufficient showing that his attorneys were inadequate. The Minnesota Supreme Court found that, despite Reed's claims that his attorneys had only met with him on a few occasions, the Record demonstrated that his counsel met with him on a total of twenty-two (22) times, during the period from March of 2005, through February of 2006. <u>Id.</u> at 588. The Court also observed that, "even if Reed was genuinely dissatisfied with his counsel he offered no excuse for delaying his request until the morning of trial." <u>Id.</u>

Nor has Reed offered any clear and convincing evidence to rebut the Trial Court's finding that his counsel was competent, or provided any evidence to excuse his delay in bringing his request for substitute counsel. See, <u>Chavez v. Weber</u>, 497 F.3d 796, 801 (8th Cir. 2007)(Federal Court's "presume the state court's factual findings to be correct unless [the petitioner] rebuts this presumption with clear and convincing evidence."), citing <u>Rousan v. Roper</u>, 436 F.3d 951, 956 (8th Cir. 2006), cert. denied, 549 U.S. 835 (2006); <u>Cox v. Burger</u>, supra at 1028-29 ("Upon review, state court factual findings 'carry a presumption of correctness that will be rebutted only by clear and convincing evidence.'"), quoting <u>Whitfield v. Bowersox</u>, 324 F.3d

1009, 1012 (8th Cir. 2003), cert. denied <u>sub nom.</u>, <u>Whitefield v. Roper</u>, 540 U.S. 1187 (2004).

Accordingly, the Supreme Court did not act contrary to Federal law in rejecting Reed's Sixth Amendment right to self-representation claim, and we recommend that the claim be dismissed with prejudice.

> b.  <u>Whether the Evidence Presented to the Jury Was Sufficient to Support Reed's Conviction</u>..

> 1)  <u>Standard of Review</u>.  On a challenge to the sufficiency of

the evidence, the critical inquiry is whether the "record evidence would reasonably support a finding of guilt beyond a reasonable doubt * * *." <u>Jackson v. Virginia</u>, 443 U.S. 307, 318 (1979).  A Jury Verdict will be upheld so long as the reviewing Court determines that "**any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319 (emphasis in original); <u>United States v. Washington</u>, 318 F.3d 845, 852 (8th Cir. 2003).  In making that determination, the reviewing Court must view the evidence, including all permissible inferences to be drawn therefrom, in the light most favorable to the Jury's Verdict.  See, <u>United States v. Beaman</u>, 361 F.3d 1061, 1064 (8th Cir. 2004), citing <u>United States v. McCarthy</u>, 244 F.3d 998, 999 (8th Cir. 2001).  Determinations as to witness credibility are "virtually unreviewable on appeal because it is preeminently the job of the finder of fact." <u>Id.</u>

quoting <u>United States v. Morris</u>, 327 F.3d 760, 761 (8th Cir. 2003) cert. denied, 540

U.S. 920 (2003).

       2)    <u>Legal Analysis</u>.  Reed argues that there was insufficient

evidence to support his conviction for the murder of Sackett.  See, <u>Amended Petition</u>,

supra at p. 3.   We conclude, however, that the Minnesota Supreme Court correctly

identified the standard of review for an insufficiency of the evidence claim, as

prescribed by the United States Supreme Court in <u>Jackson v. Virginia</u>, supra, which

the Court described as follows:

> On appeal, the reviewing court must determine whether
> there was sufficient evidence to justify a finding of guilt
> beyond a reasonable doubt by a rational trier of fact.

<u>State v. Reed</u>, supra at 581, citing <u>Jackson v. Virginia</u>, supra at 316.

The Court also noted that, under Minnesota law, a defendant can only be convicted

"on circumstantial evidence alone, [if the evidence] form[s] a 'complete chain which,

in light of the evidence as a whole, leads so directly to the guilt of the accused as to

exclude beyond a reasonable doubt, any reasonable inference other than that of guilt.'"

<u>Id.</u>, quoting <u>State v. Bias</u>, 419 N.W.2d 480, 484 (Minn. 1998).   Applying those

standards to the facts before it, the Minnesota Supreme Court determined that the

totality of the evidence "would justify a reasonable jury in convicting Reed."  <u>Id.</u> at

582.

For obvious reasons, Reed disagrees with the Jury's view of the evidence, but he has made no effort to show that the Minnesota Supreme Court's resolution of his insufficiency of the evidence claim is contrary to, or is an objectively unreasonable application of, any United States Supreme Court precedent. The Minnesota Supreme Court correctly identified, and articulated, the legal standard for adjudicating an insufficiency of the evidence claim, and the State Court's application of that standard, to the facts and circumstances of this case, was entirely reasonable and proper. The incriminating evidence, which was identified by the Court, amply supported the conclusion that there was sufficient evidence to prove Reed's guilt.

Specifically, the Minnesota Supreme Court noted that, "[b]ecause Reed was charged with aiding and abetting and conspiracy, the state was not required to prove that Reed was directly involved in firing the shot that killed Sackett." Id. at 581-82. The State presented evidence that Reed was considered the leader of the Black United Front, and the Inner City Youth League, at which Reed advocated the killing of a police officer. See, Respondent's Return, supra, Exhibits 7-10 Trial Transcripts ("TR") at1285, 1291,1348-49, 1513-15, 1620-21. Reed also had access to a bolt action rifle, which was the type used to kill Sackett, and that Reed had spoke of using the rifle against the police. TR at 1293-95, 1299-1300. Walker testified that, on a

prior occasion, he had transported Reed and Clark, as well as a bolt action rifle, in his car and had dropped them off in the area where Sackett was murdered. <u>TR</u> at 1297-98. In addition, Griffin testified that, only a week prior to Sackett's murder, Reed tried to recruit him to murder a police officer. <u>TR</u> at 1355-58. Furthermore, shortly after Sackett's murder, Reed was seen near the scene of the crime. <u>TR</u> at 1365, 1390-91.

Moreover, Trimble-Smith testified that Reed directed her to make the 911 call, including providing Trimble-Smith with the specific address, and telling her to say that a pregnant woman was in labor. <u>TR</u> at 1409-14. After making the 911 call, Trimble-Smith testified that she and Reed had traveled to Clark's residence, which was located near where Sackett was murder. <u>TR</u> at 1415-17. In addition, Trimble-Smith testified that, after arriving at Clark's residence, Reed and Clark left for approximately five (5) to seven (7) minutes. <u>TR</u> at 1417. Lastly, Griffin testified that Reed had confessed to killing Sackett when Reed told Griffin that, "when [Reed] put a bead on the officer, on that cop, he said he felt powerful, he felt strong * * * but when he seen the bullet hitting him, he said he never felt more f***ed up in his life." <u>TR</u> at 1626-27.

In sum, we find that the State Court correctly and reasonably applied the decisions of the United States Supreme Court that govern an insufficiency of the

evidence claim. Viewing the evidence in a light most favorable to the Jury's Verdict, there was more than sufficient evidence to support that Verdict. Therefore, we conclude that Reed is not entitled to a Writ of Habeas Corpus on his insufficiency of the evidence claim, and the claim should be dismissed with prejudice.

Therefore, finding no merit to Reed's Habeas claims, we recommend that his Amended Petition for Habeas relief be dismissed, in its entirety, with prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Amended Petition for a Writ of Habeas Corpus [Docket No. 6] be dismissed with prejudice.

2.     That Reed's Motion to proceed in forma pauperis [Docket No. 2] be
denied as moot.


Dated:  September 17, 2009          s/Raymond L. Erickson
                                    Raymond L. Erickson
                                    CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f) and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**October 2, 2009**, a writing which specifically identifies those portions of the Report

to which objections are made and the bases of those objections.  Failure to comply

with this procedure shall operate as a forfeiture of the objecting party's right to seek

review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than October 2, 2009,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. Section 636 to review the transcript in order to resolve all of the objections made.